**Fred BARKER and Gerri Barker, Plaintiffs,**

v.

**MADISON ASSOCIATES, a Limited Partnership, Ernest F. Steiner, 527 Madison Avenue Holdings, Inc., d/b/a 527 Madison Avenue, a New York Partnership, Swing Stage, Limited, and MDN Property Corp., Louis Dreyfus Property Group, Defendants.**

**No. 92 Civ. 3897 (LMM).**

United States District Court, S.D. New York.

Nov. 17, 1994.

David J. Sobel, Birzon & Sobel, Smith-town, NY, for Fred Barker, Gerri Barker.

David Persky, Jacobowitz, Spessard, Garfinkel & Lesman, New York City, for Madison Associates, Ernest F. Steiner, 527 Madison Avenue Holdings, Inc., HRH Const. Corp., 527 MDN Property Corp., Louis Dreyfus Corp., Louis Dreyfus Property Group.

Hugh J. Helfenstein, Oshman, Helfenstein & Matza, New York City, for National Cleaning Contractors, Inc.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

Plaintiff Fred Barker ("Barker") commenced this action against Defendants on May 29, 1992. The Court is now presented with Plaintiff's motion for summary judgment with regard to liability, and Defendants' cross-motion for summary judgment dismissing the Complaint. Plaintiff also seeks to sever the third-party action against National Cleaning Corp. ("National"). For the reasons stated below, Plaintiff's motions are denied, and Defendants' motion is granted.

### I.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only where "there is no genuine issue as to any material fact" and a party is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The moving party must demonstrate the absence of any genuine issue of material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). "[A] fact is material when its resolution would 'affect the outcome of the suit under governing law,' and a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hetchkop v. Gundolt Carpet Workroom, Inc., 841 F.Supp. 113, 115 (S.D.N.Y. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)); see also Celotex, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. The nonmoving party's "evidence ... is to be believed, and all justifiable inferences are to be drawn in [its] favor." Eastman Kodak Co. v. Image Technical Servs., —— U.S. ——, ——, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992) (quoting Anderson, 477 U.S. at 255, 106 S.Ct. at 2513).

The standard governing the inferences and burden of proof is the same in deciding cross-motions. Straube v. Florida Union Free Sch. Dist., 801 F.Supp. 1164, 1174 (S.D.N.Y. 1992); Eastman Mach. Co. v. United States, 841 F.2d 469, 473–74 (2d Cir.1988). With these rules in mind, the parties' claims are taken up below.

### II. Facts

The uncontested facts are as follows. Barker was employed as a window cleaner by Third–Party Defendant National Cleaning Corp. On July 17, 1990, Barker was allegedly injured while cleaning the windows at 527 Madison Avenue. The injury resulted from Barker's attempt to descend from a scaffold provided by Defendant Swing Stage Limited ("Swing Stage"), the general contractor for Defendant 527 Madison Avenue Holdings, Inc. ("Madison"). Barker's claim is grounded in common law negligence and violation of N.Y. Labor Law §§ 202, 240(1) (McKinney 1986).

At approximately 7:35 a.m. on July 17, Barker and his partner, Robert Bonilla ("Bonilla"), were descending down the side of 527 Madison when one of the motors driving their scaffold failed. (Barker Dep. at 260.) Thirty to forty-five minutes later, (id. at 268), Bonilla exited the scaffold, lowered himself a distance of several feet to the building's seventh floor setback, and entered the building through a window.

Following Bonilla's lead, Barker unclipped his safety harness from his safety rope, (id. at 109), climbed over the four-foot high railing of the scaffold, (id. at 51, 111), and slid

down the seven-foot cylindrical "boom" (pole) to the setback, (*id.* at 103–04, 111). While climbing over the railing, Barker claims to have "heard a cracking sound and then . . . felt the pain." (*Id.* at 111.) Barker alleges severe, permanent injury in consequence of his exit from the scaffold. (Compl. at ¶ 54.)

### III. Statutory Violation

■ Barker seeks recovery pursuant to Labor Law § 240(1), which states, in relevant part:

> All contractors and owners and their agents who contract for . . . the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect . . . scaffolding, hoists, stays, ladders . . . which shall be constructed, placed and operated as to give proper protection to a person so employed.

Plaintiff correctly notes that this statute imposes absolute liability, without regard to plaintiff's own negligence, where a violation is the proximate cause of an accident. *Zimmer v. Chemung County Performing Arts, Inc.*, 65 N.Y.2d 513, 521, 493 N.Y.S.2d 102, 482 N.E.2d 898 (1985).

■ The Court finds that § 240(1) is inapplicable to Barker's injury, as the statute was intended only to address such injuries as a worker falling from a height or being struck by a falling object. In *Ross v. Curtis–Palmer Hydro–Elec. Co.*, 81 N.Y.2d 494, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993), the Court of Appeals considered the case of a worker who incurred a serious back injury as a result of working in a contorted position on an elevated platform for over two hours. The Court noted that:

> The "special hazards" to which we referred in *Rocovich [v. Consolidated Edison Co.*, 78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991) ], however, do not encompass any and all perils that may be connected in some tangential way with the

effects of gravity. Rather the "special hazards" referred to are limited to such specific gravity-related accidents as *falling from a height* or being *struck by a falling object* that was improperly hoisted or inadequately secured (*see De Haen v. Rockwood Sprinkler Co.*, 258 N.Y. 350 [179 N.E. 764] ).

> In other words, Labor Law § 240(1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm *directly flowing from the application of the force of gravity to an object or person.* The right of recovery afforded by the statute does not extend to other types of harm, *even if the harm in question was caused by an inadequate, malfunctioning or defectively designed scaffold, stay or hoist.*

*Id.* 81 N.Y.2d at 501, 601 N.Y.S.2d 49, 618 N.E.2d 82 (emphasis supplied). In *Ross*, as in the current action, there was neither a worker's fall, nor the fall of an object upon a worker. In each case the injury could as easily have been sustained on the ground as at a great height. Barker's injury was the result of climbing over the scaffold's rail "in a bent position," (Barker Dep. at 116), which may, in a "but for" sense have been "caused by an inadequate . . . scaffold," but cannot be said to have "directly flow[ed] from the application of the force of gravity to an object or person." *Ross*, 81 N.Y.2d at 501, 601 N.Y.S.2d 49, 618 N.E.2d 82.

The Court's conclusion is not altered by Barker's recent statement that the scaffold was "swaying" as he attempted to climb out of it in a "careful, precise and slow motion." (Supp. Barker Aff. of Aug. 5, 1994 at ¶ 14.) The Court finds this testimony, in direct contradiction to Barker's testimony eighteen months earlier, (Barker Dep. at 258, 262–63, 276), entirely self-serving, and discounts it.[1]

---

1. Plaintiff has argued that his EBT testimony refers only to vertical, and not horizontal/lateral motion of the scaffold. The Court finds no support for this position in the unambiguous language of the testimony:

> Q. At the time you were stepping onto the railing of the scaffold, was the scaffold moving at all?

> A. No.

(Barker EBT at 276.) The Court finds such remarks, and the complete absence of any reference to swaying in over 300 pages of deposition testimony to be dispositive of this issue.

However, even if the Court were to accept these new allegations as true, they do not convert Barker's accident into the kind of "special hazard" that the *Ross* court characterized as falling within the purview of § 240.

To evade the clear mandate of *Ross,* Barker misreads *Gordon v. Eastern Ry. Supply, Inc.,* 82 N.Y.2d 555, 606 N.Y.S.2d 127, 626 N.E.2d 912 (1993). Barker states that the plaintiff in Ross "was injured by the sandblaster he was using to clean the railroad car and not as a result of a fall from a height." (Pl's. Affirm. in Opp'n and Reply at 5.) However the court in *Gordon* noted that "plaintiff fell off a ladder leaning against the side of the railroad car while he was using the Sandblaster." 82 N.Y.2d at 555, 606 N.Y.S.2d 127, 626 N.E.2d 912.

Finding that Labor Law § 240(1) is inapplicable to this action, the Court denies Barker's motion for summary judgment on the issue of liability, and grants Defendants' motion that this claim be dismissed as a matter of law.

## IV. Negligence

■ Defendants argue that Barker's claims, whether based on common law negligence or violation of statute,[2] must fail on a proximate causation analysis. Defendants rely on several cases in which an individual was trapped in an inconvenient but apparently safe location, and came to harm only through their somewhat creative efforts to extricate themselves.

In *Mack v. Altmans Stage Lighting Co.,* 98 A.D.2d 468, 470 N.Y.S.2d 664 (2d Dept.1984), plaintiff was stuck on a roof when his ladder was blown down by the wind. Finding an old, worn rope in a hatchway, he attempted to lower himself to the ground with it. The rope gave way and plaintiff was injured when he struck the concrete below. The Second Department dismissed plaintiff's claim under

§ 240(1), because "the failure of the defendant to properly anchor the ladder had nothing to do with plaintiff's attempt to reach the street via the rope." *Id.* 470 N.Y.S.2d at 668. The Court further observed that "the violation of the statute merely furnished the occasion for the accident to occur, rather than its proximate cause." *Id.*

In *Guida v. 154 W. 14th St. Co.,* 13 A.D.2d 695, 213 N.Y.S.2d 919 (1st Dept.1961), *aff'd,* 11 N.Y.2d 731, 226 N.Y.S.2d 439, 181 N.E.2d 453 (1962), plaintiff walked through a freight door that locked behind him and found himself locked inside a fenced alleyway. After waiting 10 or 15 minutes, plaintiff climbed over a seven-foot high metal gate, caught his ring on the gate, and severely injured his finger. The First Department dismissed the complaint, finding:

> no causal relationship between any duty on the part of defendants with respect to providing adequate and safe means of exit and the injuries sustained by plaintiff. Defendants could not have reasonably foreseen that a person in the circumstances in which plaintiff found himself would attempt to climb the fence. Plaintiff was not in an emergent situation. He was in a position of absolute safety, although subject to inconvenience. There is no reason to believe that passers-by would not have assisted him. Had he called for such aid, he would not have been injured.

*Id.* 213 N.Y.S.2d at 921.

The instant action bears great similarity to these cases. Barker, who had over twenty years experience as a window cleaner, (Barker Dep. at 12), was in an apparently safe position. Barker's deposition testimony is devoid of any suggestion that he considered himself in danger due to high winds or antici-

---

2. In addition to Labor Law § 240(1), Barker also alleges a violation of Labor Law § 202, which imposes liability upon the owner of a public building for permitting exterior windows to be cleaned unless means are provided to enable the work to be performed in a safe manner. *Burris v. American Chicle Co.,* 33 F.Supp. 104 (E.D.N.Y. 1940), *aff'd,* 120 F.2d 218 (2d Cir.1941).

Recovery under § 202 requires plaintiff to establish that a statutory violation was the proxi-

mate cause of their injury. *Gootkin v. Uniform Printing & Supply Co.,* 24 A.D.2d 448, 260 N.Y.S.2d 387 (2d Dept.1965). Proximate cause must be established whether defendants had a statutory duty or a common law duty. *Mack v. Altmans Stage Lighting Co.,* 98 A.D.2d 468, 470 N.Y.S.2d 664, 668 n. 2 (2d Dept.1984). The Court's resolution of Barker's negligence claim on a causation basis is therefore dispositive of his § 202 claim as well.

pated structural failure of the scaffold.[3] Furthermore, Barker knew that people would generally start arriving in their offices by 8:00 or 8:30 a.m., (*id.* at 260), at which point he could have anticipated a rescue attempt. Had he awaited such aid, there is no reason to believe that he would have been injured. Had Barker sustained his injury in the course of sliding down the boom, the Court would certainly conclude that "[i]t was simply not foreseeable that he would attempt to extricate himself in the manner chosen." *Mack,* 470 N.Y.S.2d at 668. The fact that the injury occurred during the preliminary stage of climbing over the railing does not change this result. To the extent that climbing over the railing may itself have been a non-dangerous action, that only reinforces the Court's determination that Defendants' conduct "merely furnished the occasion for the accident to occur." *Id.*

Barker asserts that his chosen method for leaving the scaffold cannot defeat his claim, relying on *Klien v. General Foods Corp.,* 148 A.D.2d 968, 539 N.Y.S.2d 604 (4th Dept. 1989). In *Klien* a worker was injured when he fell from an unsecured stepladder during his descent from an elevated work platform. While the statutory violation was clearly the proximate cause of the injury, the court rather cryptically observed that "[t]he fact that plaintiff's own negligence in choosing this particular method of descending from the elevated work site may have contributed to his accident is immaterial and is not a defense to the imposition of absolute liability." *Id.* at 605.

This Court can speculate that the *Klien* court's reference to the worker's negligence pertained either to the obviously unsecured condition of the stepladder, or to the availability of an alternative means of egress, such as jumping off the slightly elevated platform. Whatever the basis for the re-

mark, the case provides no support for Barker's position that proximate cause is independent of a stranded individual's actions. Clearly the dual requirements of a § 240 action were present in *Klien:* a statutory violation, and proximate cause.

*Klien* is also easily distinguished from this action on its facts. Having completed his labors, "[i]t is reasonably foreseeable that plaintiff would be required to get down." 539 N.Y.S.2d at 604. Barker, however, was not exiting a work site under ordinary conditions by an employer-provided means of egress. Faced with a malfunctioning scaffold, he undertook an unnecessary and dangerous course of action.

Finding that Barker's injury was not proximately caused by any actions of the Defendants, the Court finds all of Barker's statutory and common law claims to be fatally defective. Plaintiff Gerri Barker's derivative claim must fail with her husband's claims.

## V. Conclusions

For the foregoing reasons, Defendants' motion for summary judgment is granted and the Clerk will enter judgment dismissing the Complaint.

SO ORDERED.

---

**3.** Barker submitted a second supplemental affidavit in which he states for the first time that "I did not know whether or not it was going to plummet to the ground below, therefore, prompting both myself and Mr. Bonilla, my partner to escape from this position eight (8) floors above Madison Avenue to the seventh floor roof and thus a position of safety." (Supp. Barker Aff. of Sept. 8, 1994 at ¶ 9.)

As with Barker's first supplemental affidavit, the Court views these new allegations as an eleventh hour attempt to rewrite Barker's comprehensive 1992 deposition testimony. The Court further notes that Barker testified as to repeated scaffold failures at 527 Madison preceding the July 17 accident. (Barker Dep. at 240.)